UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| Eleanor Lovinfosse, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> - against - <br><br> Lowe's Companies, Inc., <br><br> Defendant | No. 1:23-cv-574 <br><br> Class Action Complaint <br><br> Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Lowe's Companies, Inc. ("Defendant") specializes in home improvement, selling a range of items from potted plants to cabinets from its stores and website.[1]

2. The standard online purchase experience involves a customer selecting items from the online store, add them to their "cart," enter their billing and shipping information and click to complete their transaction.

3. However, unscrupulous merchants utilize Online Choice Architecture ("OCA") to the detriment of consumers.[2]

4. The goal is to increase the "average order value" ("AOV"), the metric that measures the average gross revenue of all orders over a defined period.

5. A higher AOV offsets customer acquisition costs and means greater profit, because the business is receiving more money from each customer.

---

[1] Lowes.com.
[2] OCA can be classified as "dark patterns," which involved manipulation of design to cause a sub-optimal outcome for a user.

6. Two well-established methods include "upselling" and "cross-selling."

7. Upselling is when a merchant offers a customer a different, more expensive product than the one they intend to buy.

8. Cross-selling, according to online selling expert Kristine Neil, is where a merchant suggests or recommends the purchase of complementary items that in theory make the original product easier to use or provide some added benefit to the purchaser.[3]

9. Examples of cross-selling would be offering extra batteries with a remote control or a protection plan for a television.[4]

10. The Competition and Market Authority (CMA)'s Digital Markets Unit studying OCA in e-commerce have recommended that merchants follow certain "best practices" to prevent and limit consumer harm.[5]

11. The CMA has developed a taxonomy of consumer harms connected with OCA.

12. One subset is referred to as "sneak into basket" or "expanding shopping cart" whereby "somewhere in the purchasing journey the site sneaks an extra item into the shopping basket, often through the use of an opt-out radio button or checkbox on a prior page."

13. In its most basic form, "sneak into basket" is an aggressive and deceptive form of cross-selling.

14. In the marketing literature "sneaking can be viewed as an attempt to hide, disguise, or delay the divulging of information that the consumer may object to."

15. "Sneak into basket" relies on the default effect, with the website using this tactic

---

[3] Kristine Neil, How to Upsell & Cross-Sell on Your Online Store.
[4] Cari Thompson, Choosing the Right Offer: When to Cross-Sell and When to Upsell, FastSpring.com.
[5] Online Choice Architecture: How digital design can harm competition and consumers, 2022.

expecting that consumers will keep the added products or services in their cart, by either choosing not to remove the added items or not noticing them before the transaction is complete.

16. It was this use of OCA which affected Plaintiff and other consumers.

17. For example, a consumers using Lowe's website to purchase the General Electric ("GE") 2.4 cubic feet High Efficiency Stackable Steam Cycle Front-Load Washer will see the universal symbol of the letter "i" within a circle Information Symbol.[6]



18. Next to this symbol, it states, "These item are necessary for your appliance to function properly."



---

[6] Item # GFW148SSMWW.

19. The item in question is the "EASTMAN 2-Pack 6-ft 3/4-in Fht Inlet x 3/4-in Fht Outlet Stainless Steel Washing Machine Connector," in layman's terms, a water hose, which costs $34.98 and is identified as "Required for Use."



20. Not only does the website employ the deceptive tactic of forcing customers to "Remove" what it has described as being "Required," the washing machine is supplied with a water hose, such that it is not required to spend almost $35 extra beyond the roughly $1,000 washer.

21. A purchaser will only learn this after they have paid over one thousand dollars and reviewed the 72 page "Owner's Manual & Installation Instructions," after the washing machine is in their residence.



22. The new washing machine owner will have to read to page 14 and the "Installation

4

Instruction" to learn that the "Parts Supplied" include two water hoses with flat washers pre-installed.

 

23. Beyond the deceptive practice of adding an item such as a water hose to the customer's shopping cart and forcing them to remove it, this is compounded by the fact that it is not "Required for Use" nor "necessary for [the] appliance to function properly."

24. Upon information and belief, Defendant's website employs "sneak into basket" across a variety of items, and in many of those instances, the "required" items are only there to increase the AOV, boosting its profits.

Jurisdiction and Venue

25. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

26. The aggregate amount in controversy exceeds $5 million, including any statutory and

punitive damages, exclusive of interest and costs.

27. Plaintiff is a citizen of Virginia.

28. Defendant is a citizen of North Carolina.

29. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

30. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, with the representations described here, from Defendant's website and/or its stores, in the States Plaintiff seeks to represent.

31. Venue is in this District with assignment to the Alexandria Division because Plaintiff resides in Fairfax County and a substantial part of the events or omissions giving rise to these claims occurred in Fairfax County, including her purchase and/or use of the Product, reliance on the identified statements and omissions, and subsequent awareness these were false and misleading.

Parties

32. Plaintiff Eleanor Lovinfosse is a citizen of Falls Church, Virginia, Fairfax County.

33. Defendant Lowe's Companies, Inc. is a North Carolina corporation with a principal place of business in Mooresville, North Carolina, Iredell County.

34. Founded in 1921 as Lowe's North Wilkesboro Hardware, Defendant is a leading home improvement store, with over 1,700 locations across 50 states, 15 regional distribution centers in North America, and over 19 million customer transactions per week.

35. Plaintiff bought the above-identified GE washing machine in or around 2022 from the Lowes website.

36. Plaintiff either did not notice the added water hose when she "checked out" the

washing machine and/or she noticed it and that it was designated as "Required for Use."

37. Plaintiff had no reason to be suspicious of the ancillary items Lowes would add to her shopping cart, especially in light of the high dollar value of her purchase and the relatively small amount of the added water hose.

38. When Plaintiff received the washing machine, she saw that she did not need the extra water hoses that she was tricked into paying for.

39. Had Defendant not attempted to "sneak" the water hose and other unnecessary items into the shopping carts of Plaintiff and consumers, they would not have bought it.

40. Had Defendant not told her and other customers that an unnecessary item was necessary, Plaintiff and consumers would not have bought those items.

41. Plaintiff bought her washing machine from Lowes instead of from other merchants because she relied on its reputation of trust as an established and honest brand.

42. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

43. Plaintiff intends to, seeks to, and will purchase items from Defendant's website again when she can do so with the assurances its representations about the necessity of ancillary items are truthful.

44. Plaintiff is unable to rely on other websites and their transaction processes which purport to tell the user what additional items are necessary because she is unsure whether those representations are truthful.

45. If Defendant were required to truthfully disclose to consumers what was really necessary and what was not, Plaintiff could rely on the labeling of add-on items of other websites.

<u>Class Allegations</u>

46. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Virginia Class:** All persons in the State of Virginia who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in Arkansas, Kentucky, Idaho, Montana, Alaska, South Carolina, Tennessee, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

47. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

48. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

49. Plaintiff is an adequate representative because her interests do not conflict with other members.

50. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

51. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

52. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

53. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Virginia Consumer Protection Act of 1977,</u>
<u>Va. Code Ann. § 59.1-196, *et seq.*</u>

(Virginia Class)

54. Plaintiff incorporates by reference all preceding paragraphs.

55. Defendant misrepresented that the water hose was "required for use" of the Product, in violation of Va. Code Ann. § 59.1-196(A)(5) and (14).

56. Plaintiff and consumers relied on Defendant's designation of the water hose as "required for use" and paid separately for the supplemental hoses that were not, in fact, required to use the Product.

57. Defendant's false, misleading, and deceptive practices caused harm to Plaintiff and consumers.

58. Plaintiff and consumers would not have purchased the add-on items if they knew the that the hoses were already included in their primary purchase.

<u>Violation of State Consumer Fraud Acts</u>
(Consumer Fraud Multi-State Class)

59. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

60. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

61. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

62. The add-on item was identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it was "required for use."

63. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, its website, and targeted digital advertising.

64. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires, by selling them add-on items that were necessary for their main purchases to function.

65. Defendant's representations about the add-on item were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it was "required for use."

66. Defendant's representations affirmed and promised that the add-on item was "required for use."

67. Defendant described the add-on item so Plaintiff believed it was "required for use" which became part of the basis of the bargain that it would conform to its affirmations and promises.

68. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the add-on item.

69. This duty is based on Defendant's outsized role in the market as a trusted seller of home improvement items.

70. Plaintiff recently became aware of Defendant's breach of the add-on item's warranties.

71. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the add-on item's warranties.

72. Defendant received notice and should have been aware of these issues due to its own internal data collection, complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

73. The add-on item did not conform to its affirmations of fact and promises due to Defendant's actions.

74. The add-on item was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made in advertising, because it was marketed as if it was "required for use."

75. The add-on item was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because she expected that it was "required for use" and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

Negligent Misrepresentation

76. Defendant had a duty to truthfully represent the Product, which it breached.

77. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a leading name in home improvement, trusted by consumers.

78. Defendant's representations and omissions regarding the add-on item went beyond the specific representations on the website, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

79. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

80. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

81. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

### Fraud

82. Defendant misrepresented and/or omitted the attributes and qualities of the add-on item, that it was "required for use."

83. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

### Unjust Enrichment

84. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary, statutory and/or punitive damages and interest;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: April 28, 2023

Respectfully submitted,

/s/ Courtney Weiner
Courtney Weiner (No. 96733)
Law Office of Courtney Weiner PLLC
1629 K St NW Ste 300
Washington DC 20006
(202) 827-9980
cw@courtneyweinerlaw.com

Spencer Sheehan*
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Pro Hac Vice application forthcoming