IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ELEANOR LOVINFOSSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:23-cv-574 (RDA-LRV) |
| | ) |
| LOWE'S HOME CENTERS, LLP., | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Lowe's Home Centers, LLC's ("Defendant") Motion to Compel Arbitration and Dismiss the Case ("Motion to Compel Arbitration") or, in the Alternative, Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss"). Dkt. 17.[1] This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motions together with Plaintiff Eleanor Lovinfosse's ("Plaintiff") Amended Class Action Complaint (Dkt. 9), Defendant's Memorandum in Support (Dkt. 18), Plaintiff's Opposition (Dkt. 21), and Defendant's Reply (Dkt. 22), this Court DENIES the Motion to Compel Arbitration and DENIES WITHOUT PREJUDICE to renewal the Motion to Dismiss for the reasons that follow.

---

[1] While Defendant's Motion is styled as a "Motion to Dismiss and Compel Arbitration," considering the substance of the Motion, it is more properly characterized as a Motion to Compel Arbitration and Dismiss the Case or, in the Alternative, Motion to Dismiss for Failure to State a Claim.

## I.  BACKGROUND

### A.  Factual Background

Defendant is a national retail store that "specializes in home improvement."  Dkt. 9 ¶ 1. Plaintiff alleges that Defendant's deceptive use of "Online Choice Architecture" ("OCA") resulted in her purchasing an unnecessary water hose under the impression that it was "Required for Use." *Id.* ¶¶ 3, 19-20.  Merchants utilize OCA to increase "average order value" ("AOV"), a metric that measures the average gross revenue of all orders over a defined period.  *Id.* ¶ 5.  A higher AOV, in turn, offsets customer acquisition costs due to the business receiving more money from each customer, thus leading to greater profit.  *Id.* ¶ 5.  Two common OCA tactics are upselling and cross-selling.  *Id.* ¶ 6.  Upselling is when a merchant suggests to a customer a similar but more expensive product than the product he or she intended to buy.  *Id.* ¶ 7.  Meanwhile, cross-selling is when a merchant recommends to a customer a complementary item that, in theory, would make the original product easier to use or provide some added benefit to the customer (e.g., offering extra batteries with a remote or a protection plan for a TV).  *Id.* ¶¶ 8-9.

"Sneak into basket" is a form of cross-selling, whereby an extra item is automatically added to the customer's cart, leaving it to the customer to remove the item from his or her cart.  *Id.* ¶ 12. This tactic relies on "the default effect," meaning that the merchant expects the customer to keep the added product in his or her cart, by either choosing not to remove the added item or not noticing it before the transaction is complete.  *Id.* ¶ 15.  Defendant takes this tactic one step further by labeling additional items as "necessary" accessories when, in fact, any necessary parts are already included with the purchase of the original item.  *Id.* ¶¶ 17-20.  Defendant's use of this "sneak into basket" tactic is at the center of Plaintiff's putative class action here.

Sometime in or around 2022, Plaintiff bought a washing machine from Defendant's website. *Id.* ¶ 36. Plaintiff either did not notice the added water hose on the confirmation page when she "checked out" the washing machine and/or she noticed it and saw that it was designated as "Required for Use," and therefore, chose not to remove it. *Id.* ¶ 37. At the top of the check-out page, Plaintiff saw an information symbol (the letter "i" within a circle). *Id.* ¶ 17. Next to this symbol, the webpage stated, "These items are necessary for your appliance to function properly[,]" referring to the water hose. *Id.* ¶¶ 18-19. The water hose was also specifically labelled "Required for Use" in bold letters. *Id.* ¶ 18. Not until completing the purchase and reading the 72 page "Owner's Manual & Installation Instructions" that came with the washing machine did Plaintiff learn that all the necessary parts were supplied with the washing machine and that the water hose she purchased was in fact not necessary. *Id.* ¶¶ 21-22.

As part of the check-out process, Plaintiff had to click the "Place Order" button before completing her online transaction. Dkt. 18-1 (Declaration of Sara Ash, Defendant's Corporate Counsel) ¶ 9.[2] Directly below the "Place Order" button, the webpage stated, "By placing an order, I agree to [Defendant's] Terms and Privacy Statement." *Id.* Both the "Terms" and the "Privacy Statement" were hyperlinked. *Id.* ¶ 10. Upon clicking the hyperlinked "Terms," Plaintiff would have been redirected to a webpage containing Defendant's "Terms and Conditions of Use" (the

---

[2] Because an arbitration provision functions as "a specialized kind of forum-selection clause[,]" *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)), the Court may consider documents outside of the Complaint in resolving the Motion to Copel Arbitration, as the Court could on a motion under Federal Rule of Civil Procedure 12(b)(3), *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549-50 (4th Cir. 2006). Further, because Plaintiff's Amended Complaint references Defendant's website, Dkt. 9 ¶¶ 3 n.1, 17-19, and her online transaction process is central to her claims, *id.* ¶¶ 36-37, the Court can consider relevant portions of Defendant's website when resolving the Motion to Dismiss, *see Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (permitting consideration of extraneous material if such materials are "integral to and explicitly relied on in the complaint" (citations omitted)).

3

"Terms and Conditions"). *Id.* When making her online purchase, Plaintiff did not click on the hyperlinked "Terms" and thus was not aware of any of their contents. Dkt. 21-2 (Plaintiff's Affidavit) ¶¶ 4, 7, 11.

The Terms and Conditions were 31 pages long and contained, *inter alia*, an arbitration provision, a class action waiver provision, a choice of law provision, and a warranty disclaimer provision. Dkt. 21-1 (Defendant's Terms and Conditions). Towards the top of page 10, in large, bolded font, were the words "**Dispute Resolution**." *Id.* at 10. Under the "**Dispute Resolution**" header, in bolded but slightly smaller font, the webpage read: "**Arbitration: Please read this section carefully because it affects rights that you might otherwise have. It provides resolution of most disputes through arbitration instead of court proceeding.**" *Id.* Directly under that warning the webpage stated: "**By using the Site, you agree to give up your rights to trial in court except for certain small claims as described below.**" *Id.* Continuing under that bolded sentence, in the same size font but not bolded, the webpage provided: "Any dispute or claim made by you against [Defendant] . . . arising out of or related to your use of the Site, whether based on contract, statute, tort, fraud, misrepresentation or any other legal theory, will be resolved by binding arbitration . . . ." *Id.* at 10-11.

Below the arbitration provision, in bold, large font, were the words "**Changes to the Terms**." *Id.* at 11. Under this "Changes to the Terms" header, in bolded but smaller font, the webpage stated:

> **You agree that [Defendant] may change, terminate, modify, add, end or delete any of these the terms and conditions (including, without limitation, the Terms) under which the Site is offered at any time and without notice to you.**
>
> **[Defendant], in its sole and absolute discretion, reserves the right to update, change, terminate, suspend, modify, add, end or delete any of these Terms . . . , in whole or in part, at any time with or without notice.**

*Id.*

4

B.  Procedural Background

On April 28, 2023, Plaintiff filed her initial Complaint against Defendant in this Court. Dkt. 1.  Plaintiff then filed an Amended Complaint against Defendant on July 12, 2023, alleging a host of fraud and breach of warranty claims against Defendant, on behalf of herself and all others similarly situated.  Dkt. 9.  Subsequently, on September 12, 2023, Defendant filed its Motion to Compel Arbitration and Dismiss the Case or, in the Alternative, Motion to Dismiss for Failure to State a Claim, Dkt. 17, along with a Memorandum in Support thereof.  Dkt. 18.  Plaintiff filed her Opposition on September 26, 2023, Dkt. 21, and Defendant filed its Reply on October 2, 2023, Dkt. 22.

II.  STANDARD OF REVIEW

A. Motion to Compel Arbitration

Federal Rule of Civil Procedure 12(b)(3) allows for a party to move for dismissal for improper venue.  Fed. R. Civ. P. 12(b)(3).  Where a party moves for dismissal pursuant to a forum selection clause, such motions are "cognizable as motions to dismiss for improper venue." *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549 (4th Cir. 2006) (citation omitted).  Parties and courts sometimes treat arbitration clauses as a "specialized kind of forum-selection clause."  *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)).  Therefore, Federal Rule of Civil Procedure 12(b)(3) is a proper vehicle by which a party may move to dismiss an action due to an arbitration clause.

In considering a 12(b)(3) motion, "the court is permitted to consider evidence outside of the pleadings."  *Aggarao*, 675 F.3d at 365-66 (citation omitted).  To defeat such a motion, the non-movant must make a "*prima facie* venue showing," and the facts must be viewed "in the light most

5

favorable to the plaintiff." *Id.* at 366 (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)).

### B. Motion to Dismiss for Failure to State a Claim

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although it is true that "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) (internal quotation marks and citation omitted).

When ruling on a motion to dismiss, courts "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Typically, "courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)). "Nonetheless, courts may consider . . . documents attached to the complaint . . . 'so long as they are integral to the complaint and authentic.'" *Hugler v. Vinoskey*, No. 6:16-CV-

00062, 2017 WL 1653725, at *5 (W.D. Va. May 2, 2017) (quoting *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

### III.  ANALYSIS

In its Motion to Compel Arbitration, Defendant asks this Court to dismiss the instant lawsuit at the threshold because there is a valid and enforceable arbitration agreement between the parties.  Dkt. 18 at 2, 6-12.  In the alternative, Defendant moves this Court to dismiss the Amended Complaint for failure to state any fraud or breach of warranty claim upon which relief can be granted.  *Id.* at 2-3, 12-22.  The Court will address Defendant's Motion to Compel Arbitration and Motion to Dismiss in turn.

#### A.  Motion to Compel Arbitration

The "preeminent concern of Congress in passing" the Federal Arbitration Act ("FAA") "was to enforce private agreements into which parties had entered[.]" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985).  The FAA requires that written arbitration agreements arising out of commercial contracting "be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA "represents 'a liberal federal policy favoring arbitration agreements[.]'" *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hop. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Under such a policy, "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration[.]" *Id.* (quoting *O'Neil v. Hilton Head Hosp.,* 115 F.3d 272, 273-74 (4th Cir.1997)).

In assessing the validity of a governing arbitration provision subject to the FAA in a commercial dispute, the Fourth Circuit utilizes the test set forth in *Adkins v. Labor Ready, Inc.*:

> [i]n the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the

>dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [nonmovant] to arbitrate the dispute."

303 F.3d 496, 501 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

If the court is satisfied that an arbitration provision was agreed to in writing, it must "make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."  9 U.S.C. § 4; *see also Connell v. Apex Sys., LLC*, No. 3:19-cv-299, 2020 WL 354742, at *3 (E.D. Va. 2020) ("When a valid arbitration agreement exists and the issues in the case fall within the scope of that agreement, '[a] district court . . . has no choice but to grant a motion to compel arbitration.'" (quoting *Adkins*, 303 F.3d at 500)).

In the case at bar, Plaintiff does not appear to contest that the first, third, and fourth *Adkins* factors have been met.  Accordingly, the Court will focus its analysis on the second factor.

Defendant argues that, because Plaintiff agreed to be bound by the Terms and Conditions, which included an arbitration provision, there is a valid and enforceable arbitration agreement between the parties.  Dkt. 18 at 8-9.  In response, Plaintiff counters that (1) she did not have sufficient notice of the arbitration provision such that she could manifest assent to it; and (2) the unilateral modification provision of the Terms and Conditions renders any agreement to arbitrate illusory or unconscionable.  Dkt. 21 at 4-9.

Beginning with Plaintiff's first argument, as a web browser contract, the Terms and Conditions are enforceable where a user "had actual or constructive knowledge of the" Terms and Conditions and "manifested assent to them."  *Melo v. Zumper*, 439 F. Supp. 683, 697 (E.D. Va. 2020) (quoting *Capital Concepts, Inc. v. Mountain Corp.*, No. 3:11-CV-00036, 2012 WL 6761880, at *10 (W.D. Va. Dec. 30, 2012)).  Importantly, "courts have consistently 'recognized that [an]

8

electronic "click" can suffice to signify the acceptance of a contract, . . . as long as layout and language of the site gives the user reasonable notice that a click will manifest assent to an agreement.'" *Id.* (quoting *Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)).

Here, the mutual assent element is easily met because the layout and language of Defendant's website provided Plaintiff with—at the very least—constructive knowledge of the terms to which she was agreeing. In making this determination, the Court finds a sister court's decision in *Payne v. Amazon, Inc.*, No. 2:17-CV-2313-PMD, 2018 WL 4489275 (D. S.C. July 25, 2018) instructive. There, the district court granted the defendant's request to dismiss the case and compel arbitration and, in so doing, found the placement of the statement "By placing your order, you agree to Amazon.com's privacy notice and conditions of use" directly adjacent to the "Place your order" button to be significant. *Payne*, 2018 WL 4489275 at *5. The *Payne* court explained that "a reasonably prudent offeree knew that he agreed to Amazon's Conditions of Use by clicking the 'Place your order' button when the button appeared directly next to or above a statement hyperlinking to conditions and the statement indicated the user agreed to those conditions by ordering." *Id.* (citations omitted). As such, the district court held that the consumer had notice of the conditions of use and manifested his assent by moving forward with his order. *Id.*

Here, just as in *Payne*, during Plaintiff's check-out process, she was notified that proceeding with her purchase meant agreeing to the Terms and Conditions. Dkt. 18-1 ¶ 9. That warning appeared directly below the "Place Order" button. *Id.* Furthermore, the "Terms" were in blue hyperlink, offset by a white background, *id.*, thus making them conspicuous—a point that Plaintiff concedes, Dkt. 21 at 5 ("[I]t is difficult to dispute that the hyperlinked text was [] reasonably conspicuous . . . . (quotations omitted)). The hyperlink would have taken Plaintiff to the complete Terms and Conditions, which she could have reviewed in full, had she so desired.

Accordingly, this Court finds that Plaintiff had—at a minimum—constructive knowledge of the Terms and Conditions and her clicking the "Place Your Order" button therefore constituted mutual assent to be bound by the Terms and Conditions.

In an effort to avoid this conclusion, Plaintiff asserts that, even if she had constructive knowledge of the Terms and Conditions generally, Defendant should have expressly advised her that those Terms and Conditions included an arbitration provision—a provision that she did not expect to find in connection with the sale of a washing machine and hose. Dkt. 21 at 5-6. But, as another district court in this Circuit has held, so "long as the hyperlinked text was itself reasonably conspicuous [,] . . . a reasonably prudent . . . user would have constructive notice of the" specific "terms" themselves. *Granados v. Lendingtree LLC*, No. 322CV00504MOCDSC, 2023 WL 1481545, *2 (W.D.N.C. Feb. 2, 2023), *report and recommendation adopted*, 2023 WL 2672830 (W.D.N.C. Mar. 28, 2023) (quoting *Meyer*, 868 F.3d at 79). That Plaintiff did "not bother reading [the] terms . . . is the choice . . . [she] ma[d]e[]" and is of no consequence. *Id.* (quoting *Meyer*, 868 F.3d at 79).

Plaintiff's alternative argument that any agreement to be bound by the arbitration provision is illusory or unconscionable due to the unilateral modification provision in the Terms and Conditions is more persuasive, however. In support of her argument, Plaintiff cites *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582 (D. Md. 2013). There, an employee handbook contained the "Arbitration Policy" at issue in that case. *Caire*, 982 F. Supp. 2d at 594. Also within the employee handbook was an employee manual, which provided that "the policies and benefits described in it are subject to change at the sole discretion of [the defendant] at any time." *Id.* (citation omitted). The *Caire* court found that the defendant "purport[ing] to retain the discretion to arbitrate or not" amounted to "a nonexistent promise." *Id.* (internal quotation marks

10

and citation omitted). As such, the district court held that "[w]here a party reserves the right to "alter, amend, modify or revoke" an arbitration agreement, the promise to arbitrate is illusory and the arbitration agreement is unenforceable for lack of consideration." *Id.*

The same reasoning applies here. In addition to containing an arbitration provision, Defendant's Terms and Conditions provided:

> **You agree that [Defendant] may change, terminate, modify, add, end or delete any of these the terms and conditions (including, without limitation, the Terms) under which the Site is offered at any time and without notice to you.**
>
> **[Defendant], in its sole and absolute discretion, reserves the right to update, change, terminate, suspend, modify, add, end or delete any of these Terms, . . . in whole or in part, at any time with or without notice.**

Dkt. 21-1 at 11. Like the court in *Caire*, this Court is hesitant to give effect to an agreement whereby Plaintiff is bound by all the terms in the Terms and Conditions, including the arbitration provision, while Defendant can simply revoke any term, whenever it desires. *See also Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (finding unconscionability and applying rescission where employer retained right to unilaterally modify arbitration terms without notice).

Defendant correctly notes that unilateral modification provisions in an arbitration agreement do not automatically render the agreement unconscionable. Dkt. 22 at 5 (citing *Forbes v. SeaWorld Parks & Ent.*, No. 4:16CV172, 2017 WL 2437348, *5 (E.D. Va. June 2, 2017), *aff'd*, 707 F. App'x 168 (4th Cir. 2017)). But Defendant fails to account for the fact that the arbitration clause in the instant case goes beyond merely allowing Defendant to retain control to make unilateral modifications; Defendant here has the power to make those changes not only unilaterally, but also without notice. It is that distinction that renders the cases upon which Defendant relies inapposite. For example, in finding that the unilateral modification provision did

11

not result in an unconscionable contract, the *Forbes* Court noted that, while "the arbitration agreement only allow[ed] Defendant, not Plaintiff, to modify its terms, *the agreement require[d] [the d]efendant to provide [the p]laintiff with 30 calendar days' notice of any such modifications*." 2017 WL 2437348, at *5 (emphasis added); *see also Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 91 n.5 (4th Cir. 2005) (rejecting argument that the agreement was illusory due to a unilateral amendment clause because the "discretion [wa]s limited . . . by specific notice requirements."). By contrast, Defendant's Terms and Conditions in the instant case lack any such notice-related restraint.

    The unfair and illusory nature of an agreement whereby Defendant retains the unilateral power to modify terms of the agreement without notice is demonstrated by the nature of Defendant's business. If a customer makes a single transaction on Defendant's website, the customer would understandably be bound by the Terms and Conditions that he or she agreed to when clicking the "Place Order" button. But if the customer never engages in another transaction on the website, the customer would have no idea that any of the terms and conditions to which he or she originally agreed had changed. Defendant's position would force customers to constantly have to check Defendant's website—in perpetuity—to see if Defendant had exercised its unilateral power to modify the terms to which the customer had originally agreed.

    Defendant next contends that the unilateral modification issue that Plaintiff raises is more properly addressed during the arbitration process itself. In support of this proposition, Defendant cites the Fourth Circuit decision in *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591 (4th Cir. 2023). There, the court explained:

> The district court, for its part, concluded that the arbitration clause was not "illusory," rejecting the plaintiffs' arguments about Amazon's unilateral ability to modify certain portions of the Agreement. The court did not reach the plaintiffs' "unconscionability" assertion, explaining that, in the context of a motion to compel

>   arbitration, contract-validity contentions going to the contract as a whole must be
>   deferred for consideration during arbitration by the arbitrator.

*Amos*, 74 F.4th at 595 n.4.  Critically, in relying on the Fourth Circuit's opinion in *Amos*, Defendant overlooks the fact that the lower court explicitly considered the plaintiffs' assertion that the arbitration clause was illusory because the defendant could modify it unilaterally, only to reject that argument because the contract required the defendant to provide notice of any changes.  *Amos v. Amazon Logistics, Inc.*, No. 1:22-CV-55, 2022 WL 2181448, at *3 (M.D.N.C. June 16, 2022), *aff'd*, 74 F.4th 591 (4th Cir. 2023).  Thus, the Fourth Circuit's affirmance in *Amos* confirms that a federal court may address a challenge to an arbitration provision based on a unilateral modification clause in the first instance on a motion to compel arbitration.

In sum, the Court finds that, although the mutual assent element has been met, enforcing the arbitration provision is not appropriate because the unfettered discretion Defendant retained to modify or revoke the provision without notice rendered its promise to arbitrate illusory. Accordingly, this Court will not compel arbitration and will deny Defendant's Motion.

### B. Motion to Dismiss for Failure to State a Claim

Turning to Defendant's Motion to Dismiss for Failure to State a Claim, Defendant asserts, *inter alia*, that Plaintiff waived her right to pursue this matter as a class action and thus can only pursue claims in her individual capacity, that Plaintiff cannot bring her Virginia state law claims because she agreed to choice of venue and choice of law provisions mandating the application of North Carolina law, and that Plaintiff's breach of warranties claims fail because she agreed to a warranty waiver at the time of her purchase.  Dkt. 18 at 2-3, 12-22.

Notably, many of Defendant's arguments appear to rely on Plaintiff having agreed to be bound by certain provisions found in the Terms and Conditions—a contract that this Court has held to be illusory due to the lack of notice required for the unilateral modification provision

13

contained therein. *See supra* Part III.A.2.i. Accordingly, the Court will deny the Motion to Dismiss without prejudice and permit Defendant to file a renewed motion to dismiss pursuant to Rule 12(b)(6) so that the parties can address any issues that have not been mooted by the instant Memorandum Opinion and Order.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Compel Arbitration and Dismiss the Case (Dkt. 17) is DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. 17) is DENIED WITHOUT PREJUDICE to renewal; and it is

FURTHER ORDERED that Defendant file any renewed motion to dismiss within thirty (30) days of this Memorandum Opinion and Order and that Plaintiff file a brief in response within fourteen (14) days of any renewed motion.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
August 8, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge